1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

| | |
|---|---|
| MARK S. DEARDORFF,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>Defendant. | CASE NO. C15-5576-RSL-MAT<br><br>REPORT AND RECOMMENDATION<br>RE: SOCIAL SECURITY DISABILITY<br>APPEAL |

15

16

17

18

19

Plaintiff Mark Deardorff proceeds through counsel[1] in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court

20

21

22

23

---

[1] Plaintiff's counsel is advised that her briefing in this matter fails to comply with the formatting requirements set forth in Local Civil Rule 10(e), including that no less than three inches of space be left at the top of the first page and the inclusion, at the right side of the bottom of each page, the law firm, mailing address, and telephone number of the attorney preparing the paper.  This Court has peviously advised counsel as to formatting requirements.  Counsel is cautioned that her future filings must comply with LCR 10 and all other applicable local and civil rules, and that any future noncompliant filings may be stricken.

REPORT AND RECOMMENDATION
PAGE - 1

recommends this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1956.[2]  He received his GED and previously worked as a deck hand and recreation advisor.  (*See* AR 1619, 1760)

Plaintiff filed DIB and SSI applications in November 2007, alleging disability beginning March 1, 2006.  (AR 274-82.)  He later amended his onset date to June 14, 2007.  (AR 12, 96.) Plaintiff remained insured for DIB through December 31, 2011 and was required to establish disability on or prior to that "date last insured" (DLI) to receive DIB.  *See* 20 C.F.R. §§ 404.131, 404.321.  His applications were denied at the initial level and on reconsideration.

On March 19, 2010, ALJ Larry Kennedy held a hearing.  (AR 32-89.)  On June 7, 2010, the ALJ issued a decision finding plaintiff not disabled.  (AR 152-70.)  The Appeals Council subsequently remanded the case for further proceedings.  (AR 172-74.)

ALJ Kennedy held a second hearing on February 17, 2011 (AR 90-146) and again issued an unfavorable decision, dated August 24, 2011 (AR 9-31).  After the Appeals Council denied a request for review (AR 1806-09), plaintiff sought review by this Court (*see* AR 1813).

On February 19, 2014, the Court remanded the matter for further administrative proceedings.  (AR 1827-29 and AR 1836-55 (Order and Report and Recommendation in *Deardorff v. Colvin*, C12-6040-RJB-JRC).)  While finding no error in the ALJ's decision to discount plaintiff's credibility, the Court directed the ALJ to further evaluate and develop the record as to plaintiff's venous insufficiency, to further assess plaintiff's visual impairment, and to reassess the opinions of Dr. Norma Brown as to plaintiff's mental impairments.  (*See id.*)

---

[2] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

REPORT AND RECOMMENDATION
PAGE - 2

Plaintiff, in the meantime, had filed a subsequent SSI application.  On October 16, 2013, the State agency issued a favorable determination, finding plaintiff disabled based on his physical impairments beginning as of the June 20, 2013 SSI application date.[3]  (AR 1820-25.) The State declined to further develop plaintiff's claim of disability based on mental impairments because that claim would not allow for a more favorable allowance.  (AR 1821.)

On June 12, 2014, the Appeals Council affirmed the State agency determination finding plaintiff disabled beginning June 20, 2013.  (AR 1889.)  However, it found further proceedings needed for the period prior to that date, vacated the ALJ's decision, and remanded the case to a different ALJ for consideration of plaintiff's disability before June 20, 2013.  (AR 1189-90.)

ALJ Stephanie Martz held two additional hearings, on November 12, 2014 (AR 1726-48) and on March 26, 2015 (AR 1749-82).  She took vocational expert testimony at both hearings, the first of which plaintiff was not able to attend, and took testimony from plaintiff at the second hearing.  In a decision dated June 11, 2015, the ALJ found plaintiff not disabled from his alleged onset date of June 7, 2007 through June 19, 2013.  (AR 1601-21.)  Plaintiff appealed this final decision of the Commissioner to this Court.  *See* 20 C.F.R. §§ 404.984, 416.1484.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

---

[3] SSI "is not payable prior to the month following the month in which the application was filed[.]"  20 C.F.R. § 416.335.  Plaintiff was not able to file another DIB application because of his December 31, 2011 DLI.  *See* 20 C.F.R. §§ 404.131.

REPORT AND RECOMMENDATION
PAGE - 3

engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe plaintiff's affective disorder, anxiety disorder, cognitive disorder not otherwise specified (NOS), substance abuse/dependence, obesity, and bilateral hip degenerative arthritis.  She found a number of other impairments not severe, including a visual impairment and venous insufficiency/bilateral leg edema.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform medium work within the following parameters:  he can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, and is not limited in walking, standing, and sitting, with normal breaks; he is not limited in pushing/pulling with upper extremities other than within the lifting/carrying capacity; he can occasionally balance, but cannot climb ropes, ladders, and scaffolds, and should avoid concentrated exposure to hazards such as machinery and heights; he can perform simple routine tasks and follow short, simple instructions; he can do work that needs little or no judgment, and can perform simple duties that can be learned on the job in a short period; he has an average ability to perform sustained work activities (i.e., he can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence; he can have occasional interactions with coworkers and supervisors, and can work in close proximity to

REPORT AND RECOMMENDATION
PAGE - 4

coworkers, but not in a cooperative or team effort; he can respond appropriately to supervision, coworkers, and work situations, and deal with occasional work setting changes; and he should not deal with the general public, as in a sales position or where the general public is frequently encountered as an essential element of the work process, but incidental contact with the general public is not precluded.  With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With consideration of the Medical-Vocational Guidelines and the assistance of the vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as an airplane cleaner, hand packager, and industrial cleaner.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting the opinion of a consultative examiner as to his

REPORT AND RECOMMENDATION
PAGE - 5

physical impairments, in deeming his venous insufficiency edema and visual impairment not severe, and in rejecting medical opinions associated with his mental impairments.   He also maintains error at step five.   He requests remand for an award of benefits.   The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Physical Impairments</u>

Plaintiff avers error in the step two non-severity determinations as to his venous insufficiency edema and visual impairment.   He also challenges the ALJ's consideration of the opinions of consultative examiner Dr. Mark Heilbrunn.

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities.   *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§ 404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28).   "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."   *Id*.   An ALJ is required to consider the "combined effect" of an individual's impairments in considering severity.   *Id*.   A diagnosis alone is not sufficient to establish a severe impairment.   Instead, a claimant must show his medically determinable impairments are severe.   20 C.F.R. §§ 404.1512(c), 416.912(c).

The ALJ assesses medical opinion evidence at step four.   Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v.*

REPORT AND RECOMMENDATION
PAGE - 6

*Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A.     Venous Insufficiency Edema

Plaintiff first reported lower leg edema in February 2009 and was encouraged to keep his legs elevated above his heart.  (AR 1068-70.)  With an additional report of edema in May 2009, he was advised to sleep with his feet up.  (AR 999-1000.)  After twice reporting leg swelling in May 2010, he was prescribed compression stockings.  (AR 1521, 1453, 1526.)  In September 2010, he reported painful edema over the past year preventing him from exercise other than walking, and from "doing much during the day."  (AR 1579-80.)  He was encouraged to use compression stockings and elevate his legs.  (AR 1582.)  In October 2010, plaintiff's legs were still swollen, he was not wearing support stockings, and there was "slight weeping" on his left shin.  (AR 1577.)  A physician "explained again about low sodium, stockings, raising legs, switch to lasix, lose weight[.]"  (AR 1578.)

On December 24, 2010, plaintiff was hospitalized for cellulitis and edema of the left lower extremity, and described as having a "significant history of venous stasis."  (AR 1554-58.)  Multiple appointments in January 2011 document his wound and edema, and a referral for custom compression stockings.  (AR 1589-90, 1567-68, 1564-65.)  In the February 2011 hearing, plaintiff attested to his swollen legs and a recently opened wound.  (AR 113-14.)  The ALJ declined an offer by counsel for plaintiff to show his swelling and wound.  (AR 112.)

Plaintiff fell in April 2011 (*see* AR 2274) and had bilateral lower extremity edema in

REPORT AND RECOMMENDATION
PAGE - 7

1    May 2011 (AR 2275).  However, he did not thereafter present with edema until February 2013,[4]

2    when he was found to have some peripheral edema and loss of sensation in his right foot and

3    toes.  (AR 2238; *see also* AR 2246-47 (no edema observed or complained of in August 2012).)

4    In March 2013, a provider observed trace edema with compression stockings, and described

5    plaintiff's chronic insufficiency as "doing well" with that treatment.  (AR 2233-34.)  In June

6    2013, a physician noted "some discoloration of the lower extremities and purplish-colored skin

7    with some mild edema which has been held by compression stockings[,]" and decreased

8    sensation in bilateral feet.  (AR 2225.)

9        On October 14, 2013, Dr. Heilbrunn noted marked lower extremity stasis dermatitis,

10   varicose veins, and peripheral edema.   (AR 2170.)   Considering lower extremity venous

11   insufficiency and other physical impairments, Dr. Heilbrunn assessed plaintiff as, *inter alia*, able

12   to stand/walk for approximately five to ten minutes uninterrupted and for two to three out of

13   eight hours, requiring the use of a cane in his right hand, and with the ability to lift/carry up to

14   ten pounds with either hand occasionally.  (AR 2172-74.)

15       This Court previously directed the Commissioner to reconsider the evidence and further

16   develop the record in relation to plaintiff's venous insufficiency edema.   The current ALJ

17   decision describes most of the relevant evidence in detail, and concludes the history of this

18   impairment during the period relevant to the claim – from the June 7, 2010 alleged onset date

19   through June 19, 2013 – did not show the condition caused more than minimal limitations for the

20   twelve-month duration required for a severe impairment.  (AR 1605-07.)  *See* 42 U.S.C. § 423

21   (d)(1)(A) and 20 C.F.R. §§ 404.1505, 1509, 416.905, 909 (impairment must have lasted or be

22   expected to last at least twelve months).  She describes the condition as only transient, pointing

23   _____

     [4] The ALJ identifies this date as February 2012, citing to a 2009 record.  (*See* AR 1606.)

REPORT AND RECOMMENDATION
PAGE - 8

to the significant gaps in reporting, minimal records, and observation of only "trace" edema after the December 2010 hospitalization and February 2011 testimony. (AR 1607.) The ALJ rejected plaintiff's explanation for the absence of documentation as based on a lack of insurance, noting numerous Veteran's Administration (VA) appointments. (*Id.*) She also rejected plaintiff's testimony that, since his December 2010 hospitalization, he had to elevate his legs every fifteen minutes throughout the day and night, pointing to the absence of medical support for that contention and the March 2013 observation he was "doing well" with only trace edema. (*Id.*)[5] The ALJ acknowledged the Court's directive to further develop the record, but found "no indication" of any additional records to obtain, and stated plaintiff's representative failed to pursue her suggestion, at both the 2014 and 2015 hearings, to brief this issue. (AR 1607.)

The ALJ's consideration of plaintiff's venous insufficiency edema lacks the support of substantial evidence. In the 2015 hearing, plaintiff testified he was able to avoid substantial swelling, incredible pain, thrombosis, open sores, and treatment for this condition by following his doctor's recommendations to elevate his legs, use assistive devices to walk, and wear compression stockings. (AR 1766-67.) If he failed to elevate his legs, sores developed "within a few days[.]" (*Id.*) However, he could "pretty much deal" with sores, outside of having them checked during his regular doctor visits. (AR 1767-68.) Plaintiff also attributed the absence of medical records associated with this condition after January 2011 to his lack of health care and inability to see a doctor on a regular basis. (AR 1768.) He testified that, since December 2010, he elevated his legs above his heart "[a]lmost all day and night[,]" did so immediately after performing any tasks that involved him standing up, and could stand on his legs for "maybe ten

---

[5] The ALJ cites to the March 2013 record as the only mention of leg elevation since the 2010 hospitalization, but it does not appear that that record contains any such reference. (*See* AR 2232-37.)

REPORT AND RECOMMENDATION
PAGE - 9

minutes at the most." (AR 1771-72.)

The ALJ addressed plaintiff's testimony only in part, pointing to plaintiff's ongoing VA appointments and the absence of a recent or specific medical opinion supporting the need for plaintiff to elevate his legs every fifteen minutes. She did not address plaintiff's testimony that the absence of treatment notes showing more than trace edema or ongoing weeping wounds resulted from his compliance with earlier recommendations from multiple providers to elevate his legs, as well as his ability to self-treat weeping wounds. There was, for example, no evidence of treatment received at the time the ALJ declined the offer to observe plaintiff's swollen legs and a recently opened wound in February 2011. (*See* AR 112-14.) While the ALJ found plaintiff's testimony not fully credible as a general matter, and this finding is not subject to review, she addressed plaintiff's venous insufficiency edema only at step two and did not thereafter address the testimony specifically associated with this condition. (*See* AR 1610-19.)

Nor was the ALJ's consideration of the evidence of plaintiff's venous insufficiency edema complete. The ALJ did not mention plaintiff's April 2011 fall (AR 2274) or May 2011 bilateral lower extremity edema (AR 2275). She did not consider, at step two, either the June 2013 record of discolored, "purplish-colored" lower extremities with edema and decreased sensation in his feet (AR 2225), or Dr. Heilbrunn's October 2013 evaluation. The ALJ found these and other records not indicative of plaintiff's functioning during the relevant period, and as showing "a significant worsening" in plaintiff's functioning "for the period he was granted benefits." (AR 1619.) Yet, the June 2013 appointment appears to have occurred before or, at the most, only one day after the relevant period. (*See* AR 2223, 2225 (date of note listed as June 17, 2013, entry date as June 18, 2013, and signed by physician on June 20, 2013).) Further, Dr. Heilbrunn examined plaintiff only some three-and-a-half months after the period at issue.

REPORT AND RECOMMENDATION
PAGE - 10

The Commissioner contends the ALJ reasonably interpreted Dr. Heilbrunn's report as not relevant given its date, his use of the present tense in assessing limitations, and the absence of any indication he attempted to assess plaintiff's functionality before June 20, 2013.  However, "reports containing observations made after the period for disability are relevant to assess the claimant's disability[,]" and "are inevitably rendered retrospectively and should not be disregarded solely on that basis."  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).  It is further clear that, in finding plaintiff disabled based on his physical impairments as of June 20, 2013, the Social Security Administration has already deemed Dr. Heilbrunn's October 2013 findings and opinions relevant to an earlier time period.  (*See* AR 1819-24 (partially adopting Dr. Heilbrunn's October 2013 findings and assessed limitations).)

The ALJ additionally failed to satisfy her obligation to further develop the record.  She did request additional briefing at the 2014 hearing.  (AR 1731-34.)  However, at the 2015 hearing, both counsel for plaintiff and the ALJ acknowledged the record contained all of the available documentation associated with venous insufficiency edema.  (*See* AR 1752-57, 1773-74.)  Plaintiff's counsel argued the records supported the conclusion that, at the least, plaintiff's physical impairments became disabling as of the December 2010 hospitalization, that plaintiff has had to elevate his legs since that time, and that his condition had continued to deteriorate to the point that he utilized a walker at the time of the 2015 hearing.  (AR 1755-57.)  Plaintiff testified consistently with this theory.  (AR 1771-72.)

The ALJ indicated she would "look more closely" at the edema records (AR 1774), but did not take any further action, such as calling a medical expert to consider the evidence.  Plaintiff had been found disabled as of June 20, 2013, the date of his SSI application, and the record contained evidence of ongoing symptoms associated with venous insufficiency edema just

REPORT AND RECOMMENDATION
PAGE - 11

1    before and shortly after that date.  Given these circumstances, the ALJ should have called upon

2    the services of a medical expert to consider the evidence as a whole and to infer the date of

3    disability onset.  *See DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991) (ALJ required to

4    call medical advisor where medical evidence is not definite concerning onset date and medical

5    inferences must be made); SSR 83-20 ("[The ALJ] should call on the services of a medical

6    advisor when onset must be inferred."); *Armstrong v. Commissioner of the Soc. Sec. Admin.*, 160

7    F.3d 587, 589-90 (9th Cir. 1998) (the term "'should'" in SSR 83-20, in referring to calling a

8    medical expert, means "'must.'")  The ALJ, for this reason and for the reasons stated above,

9    erred in considering plaintiff's venous insufficiency edema.

10   B.    Visual Impairment

11          In March 2007, plaintiff suffered an eye injury that "healed nicely." (AR 822-25.)  In

12   December 2008, he reported "difficulty with depth perception (missing handrails, missing

13   curbs/steps, difficulty grasping objects etc); bumping into objects in his [left] field[,]" and that

14   his ability to compensate for his monocularity had "become increasingly difficult."  (AR 1100.)

15   At that time, an optometrist discussed compensatory vision techniques and the "use of a walking

16   stick/cane to judge depth of steps and curbs."  (*Id*.)   As of June 2009, plaintiff had corrected

17   vision of 20/200 in his left eye and 20/25 in his right eye.  (AR 1005.)

18          The ALJ found plaintiff's failure to follow through with the December 2008 treatment

19   recommendations indicated "his eyesight was not limited enough to pursue such avenues."  (AR

20   1608.)   She found the visual impairment not severe based on the lack of complaints and

21   treatment in the record.  (*Id*.)   The Commissioner denies error, pointing to the absence of any

22   concrete functional limitations for which the ALJ failed to account, and plaintiff's failure to

23   describe the specific effect of his visual impairment on his ability to perform work functions.

REPORT AND RECOMMENDATION
PAGE - 12

The ALJ's consideration of the evidence associated with plaintiff's visual impairment lacks the support of substantial evidence.  It does not reasonably follow from plaintiff's failure to obtain a walking stick or cane that his eye impairment did not impose any functional limitations whatsoever within the relevant time period.  The ALJ, moreover, did not consider the findings or opinions of Dr. Heilbrunn in relation to this impairment.  Dr. Heilbrunn found corrected vision of 20/70 on the right and 20/800 on the left, and assessed plaintiff's bilateral corrected visual acuity as decreased on the right and nonfunctional on the left.  (AR 2170, 2173.)  He opined plaintiff would "not be able to read very small print and would have difficulty viewing a computer screen" and "may have difficulty determining differences in shape and color of small objects." (AR 2173.)  This opinion falls outside, but in close proximity to the time period relevant to the ALJ's decision and there is no indication plaintiff suffered some subsequent injury or rapid deterioration in his vision.  The ALJ should have considered this evidence in assessing the severity of and any limitations associated with plaintiff's visual impairment.

<u>Mental Impairments</u>

Plaintiff avers error in the ALJ's consideration of the three opinions from examining psychologist Dr. Norma Brown (AR 826-41 (June 2007), AR 933-45 (February 2009), AR 1534-47 (January 2010)), the October 2013 opinions of consultative psychiatric examiner Dr. Clifford Tartalia (AR 2161-66), and the March 2015 opinions of VA addiction psychiatrist Dr. Timothy Bondurant (AR 2349).  He maintains the evidence from Drs. Brown, Tartalia, and Bondurant support a finding of disability back to his 2007 alleged onset date.

A.    <u>Dr. Brown</u>

Dr. Brown, in all three of her evaluations, assessed a variety of marked and severe cognitive and social limitations.  (AR 828, 935, 1537.)  In ordering remand, this Court concluded

REPORT AND RECOMMENDATION
PAGE - 13

the prior ALJ erred in, *inter alia*, rejecting Dr. Brown's opinions based on the unremarkable mental status examinations, the reliance on plaintiff's discredited subjective reports, and inconsistency with the longitudinal record.  (AR 1827-29, 1849-53.)  The Court also deemed Dr. Brown's opinions uncontradicted, noting the ALJ had not made reference to March 2008 opinions of nonexamining psychologist Dr. Michael Regets.  (*See id.*; AR 871 (assessing plaintiff as able to perform simple, routine and complex tasks, persist for at least two hours at a time, and to do best not working around the general public).)

On remand, the ALJ again declined to give significant weight to Dr. Brown's opinions. In so doing, she relied on the opinions of evaluating psychologist Dr. William Chalstrom.  (AR 1617.)[6]  Dr. Chalstrom, in March 2008, stated plaintiff appeared to have social phobia, but his depression seemed better, noted he was able to follow both short and simple and more complex instructions during testing, found his concentration and memory good overall, but with slow processing speed, and opined his social interaction "would be affected by his longstanding problems in social situations and it would appear that he would do much better working where he did not have to have much interaction with others."  (AR 845-46.)  Given this contradictory opinion evidence, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of Dr. Brown.  *Lester*, 81 F.3d at 830-31.

An ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct."  *Id.*

---

[6] As before, the ALJ did not mention the opinion evidence from Dr. Regets.

REPORT AND RECOMMENDATION
PAGE - 14

"[T]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. at 722. *Accord Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), and "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff clarifies that he does not now challenge the ALJ's finding he could perform simple, routine tasks involving little to no judgment, but does dispute the ALJ's rejection of social and adaptive limitations assessed by Dr. Brown.[7] However, as set forth below, the ALJ provided a detailed, thorough review of the evidence, a lengthy explanation as to her interpretation of that evidence, and several specific and legitimate reasons for her conclusion.

1.  Reliance on Subjective Reports, Conclusory Opinions, and Substance Abuse:

"An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan*, 169 F.3d at 602). *See also Calkins v. Astrue*, No. 08-35927, 2010 U.S. App. LEXIS 12447 at *3-5 (9th Cir. Jun. 17, 2010) ("[A]n ALJ must be permitted to discount an opinion based principally upon a claimant's self-reporting if the record contains objective evidence that the self-reporting is not

---

[7] As described above, the ALJ found plaintiff had an average ability to perform sustained work activities; could have occasional interactions with coworkers and supervisors, work in close proximity, but not in a cooperative or team effort with coworkers; could respond appropriately to supervisor, coworkers, work situations, and deal with occasional work setting changes; and should not deal with general public as in a sales position or where general public is frequently encountered, but incidental contact is not precluded. (AR 1610.)

REPORT AND RECOMMENDATION
PAGE - 15

credible.")  An ALJ may also reject a physician's opinions as brief, conclusory, or "check-off" opinions lacking adequate explanation or sufficient support of clinical findings.  *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[T]he ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'") (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

The ALJ found Dr. Brown's opinions to reflect significant reliance on plaintiff's discredited subjective reporting.  (AR 1616.)  The credibility assessment, previously upheld by this Court and not now subject to review, included consideration of inconsistency with objective evidence, lack of corroborating medical evidence, evidence of minimal and sporadic treatment, evidence of improvement and stability with even minimal treatment, inconsistent activities, continued substance abuse despite treatment, the failure to be forthcoming regarding the nature and extent of substance abuse, and the receipt of state unemployment benefits, and holding himself out as able to work in order to receive those benefits, through May 2010.  (AR 1611-15.)

Responding to observations of this Court in ordering remand, the ALJ noted Dr. Brown's failure to explain her conclusions and the resulting difficulty to assess factors relied upon independent of plaintiff's subjective reporting.  (AR 1616.)  She found it clear Dr. Brown did not have an accurate diagnostic picture of plaintiff.  (*Id.*)  For example, in 2007, Dr. Brown was unaware of any substance abuse, including plaintiff's then ongoing use of heroin.  (*See* AR 827.) The ALJ acknowledged testing administered by Dr. Brown, but found plaintiff's failure to be forthcoming regarding his substance abuse "could have accounted to some degree for impaired testing performance."  (AR 1617-18.)

REPORT AND RECOMMENDATION
PAGE - 16

1    The ALJ also addressed the Court's notation of the relative consistency between Dr.

2    Brown's three evaluations.  She concluded such consistency did not equate to accuracy, pointing

3    to the "inaccurate diagnostic picture," and Dr. Brown's failure to explain her conclusions despite

4    three opportunities to do so.  (AR 1616.)  The ALJ added:  "She did not treat the claimant, so

5    there are no clinical notes to explain her conclusions, and she does not indicate that she had the

6    opportunity to review any records."  (*Id*.)

7        As related specifically to the social/adaptive limitations assessed by Dr. Brown, the ALJ

8    pointed to the explanations for her opinions as clearly reflecting her reliance on plaintiff's

9    subjective reports.  (AR 1618 (citing AR 828 ("Overwhelmed in public", "extreme anxiety",

10   panic attacks, decreased motivation, tremors when upset, affect on handwriting); AR 935

11   ("[S]evere anxiety & depression which impacts social relationships.  Can't handle stress of being

12   around others.  Very emotionally labile");  AR 1537 ("He tends to be very anxious around others

13   and is easily intimidated and overwhelmed.  He reacts to frustration with anger and has problems

14   keeping his anger and frustration under control[.]"; "He can become very easily upset in social

15   situations even with people he doesn't know."; "He appears to have considerable difficulty

16   dealing with his frustration."; "He deals with his frustration inappropriately."))  She found this

17   reliance problematic given plaintiff's failure to be forthcoming regarding his substance abuse,

18   the inconsistency with the longitudinal medical evidence and with plaintiff's activities, as

19   discussed below, and the fact that Dr. Brown did not have the benefit of reviewing plaintiff's

20   treatment records, which the ALJ found did not support plaintiff's subjective reports or the

21   limitations assessed.  (*Id*.)

22       Plaintiff maintains Dr. Brown based her opinions on proper clinical diagnostic

23   techniques, pointing to various testing results and clinical observations.  (*See* Dkt. 11 at 13-15.)

REPORT AND RECOMMENDATION
PAGE - 17

He denies any impact of substance abuse as of Dr. Brown's 2009 evaluation because he was then on a methadone maintenance program, and maintains the record shows "he has been largely abstinent from heroin since 2008 and the VA considers him to be in full compliance with its treatment program." (*Id*. at 14.)

Dr. Brown, in both the 2009 and 2010 evaluations, stated there was no indication of alcohol or drug abuse, and described plaintiff as in remission and in a methadone maintenance program. (AR 934, 1536.)  Yet, as discussed in the ALJ's decision, plaintiff's substance abuse continued even after Dr. Brown's January 2010 evaluation.  (*See* AR 1614-18.)  His VA providers placed him on concerned status in October 2009 due to his ongoing substance abuse, that status continued as of March 2010 given seven positive urinalysis results for illicit substances, including oxycodone in February 2010 (AR 1369), and he continued to have positive urinalysis results through February 2011.  (AR 1614 (citations to record omitted).)  The ALJ acknowledged plaintiff procured a medical marijuana certificate in February 2011, but noted the absence of any rationale or explanation for that use, and found his prior use without approval and his failure to be forthcoming regarding the nature and extent of his substance abuse to render his subjective reports less credible.  (AR 1615.)  (*See also* AR 843 (plaintiff denied any drug use other than marijuana to Dr. Chalstrom in March 2008).)

The ALJ's interpretation of the evidence from Dr. Brown was rational and her conclusions fully explained and supported by substantial evidence.  Plaintiff fails to demonstrate error in the ALJ's conclusion that Dr. Brown relied in significant part on plaintiff's discredited subjective complaints, that her conclusions were rendered and testing results obtained without full knowledge of plaintiff's ongoing substance abuse, and that Dr. Brown otherwise failed to provide adequate explanations or support for her opinions.

REPORT AND RECOMMENDATION
PAGE - 18

2.      Inconsistency with Medical Record and Activities:

The ALJ found Dr. Brown's opinions as to plaintiff's functional limitations inconsistent with the medical evidence of record.   (AR 1616-17.)   Pointing to her earlier credibility discussion (AR 1611-13), the ALJ noted VA records including minimal mental health treatment outside of that provided for addiction, the significant gaps in treatment and unmedicated periods, and plaintiff's general stability even during those unmedicated periods.  (AR 1616-17.)

The ALJ observed that, while Dr. Brown attributed plaintiff's problems to a brain injury sustained in 1980 and referred him to a head injury program, it did not appear plaintiff followed through with this referral and no other provider referred him to such a program.  (AR 1617.)  The ALJ identified and described in detail numerous specific inconsistencies between Dr. Brown's evaluations and the findings and observations on evaluation by Dr. Chalstrom.  (*Id*.)  She noted plaintiff's demonstrated abilities on testing in Dr. Brown's 2010 evaluation, and found it significant that plaintiff's treating mental health providers at the VA had not noted any significant cognitive limitations or deficits.  (*Id*.)  The ALJ identified inconsistency between the social limitations assessed by Dr. Brown and the medical evidence of record, "particularly the longitudinal VA records, which show that the claimant was able to participate actively in numerous treatment groups and interact appropriately with various providers."  (AR 1618.)

The ALJ also construed the record as reflecting activities inconsistent with plaintiff's allegations and the opinions of Dr. Brown.  (*Id*.)  The ALJ pointed to plaintiff's ability to attend treatment groups and the methadone clinic via a ferry on a daily basis, his traveling, and his interactions with friends and family.  (AR 1618; *see also* AR 1613-14 (considering his ability to, *inter alia*, go shopping, prepare meals, care for pets, manage his finances, perform household chores, take his dog for walks, go to the park and music events, play Bingo, work on cars, work

REPORT AND RECOMMENDATION
PAGE - 19

part-time in a shelter kitchen in 2009, frequently visit with "'a couple of good buddies'", take a bus to visit friends, go to the ferry terminal and library, take the ferry to Seattle daily for VA appointments and the methadone clinic, travel to Florida, and go to the gym three days a week to swim).)  She found Dr. Brown's opinion that plaintiff was easily intimidated and overwhelmed inconsistent with the record as a whole and, in particular, with plaintiff's ability to complete a legal action against the Catholic Diocese, including a seven-hour deposition.  (AR 1618.)

Plaintiff identifies various aspects of the record as consistent with the opinions of Dr. Brown, including diagnoses, Global Assessment of Functioning Scores, and evidence of psychiatric treatment and medication.  (*See* Dkt. 11 at 16.)  He denies his ability to interact in "inherently 'safe'" places, such as with health care providers, other participants in treatment groups, and a small number of friends and family, contradicts Dr. Brown's opinions.  (*Id*.)  He also objects to the ALJ's consideration of his legal action as insensitive, unreasonable, and not supported by the record.  (*See* AR 1041 (fearful and hesitant to go through another round of depositions and hearings), 1054, 1067 (deposition "trying and exhausting"), 1069 (proud able to make it though deposition without relapsing), 1762-63 (did not cope very well with deposition).)

An ALJ may reject a physician's opinion based on inconsistency with the record, *Tommasetti*, 533 F.3d at 1041, and based on inconsistency with a claimant's activities, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Plaintiff's participation in the lawsuit and completion of a deposition is not compelling evidence of his social or adaptive abilities in the workplace.  However, as one of several factors identified in support of the ALJ's reasoning, any error is properly deemed harmless.  *See Molina*, 674 F.3d at 1115 (error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.");

REPORT AND RECOMMENDATION
PAGE - 20

1    *Carmickle*, 533 F.3d at 1162-63 (error may be deemed harmless where ALJ provides specific

2    reasons supporting an assessment and substantial evidence supports the conclusion).  Plaintiff

3    offers an alternative interpretation of the evidence.  Because the ALJ's interpretation is at least

4    equally rational, the ALJ's reliance on inconsistency with the medical record and with plaintiff's

5    activities provides additional substantial evidence support for the ALJ's rejection of the degree

6    of limitation assessed by Dr. Brown.

7    B.    Dr. Tartalia

8         Dr. Tartalia conducted a consultative psychological evaluation of plaintiff on October 5,

9    2013.  (AR 2161-66.)  He assessed plaintiff as able to perform simple and repetitive tasks and to

10   accept instructions from supervisors if perceived as non-threatening and non-hostile, as well as

11   supportive.  (AR 2165.)   He assessed plaintiff as unable to interact with coworkers or the public

12   "at this time due to his avoidance patterns, anxiety, and disorganization under stress[,]" unable to

13   perform work activities on a consistent basis without special or additional instruction "due to

14   present level of anxiety and avoidance patterns[,]" unable to maintain regular attendance,

15   complete a normal workday or week without interruptions due to his psychiatric condition as

16   described, and unable to deal with the usual stresses encountered in the workplace due to his

17   impaired stress tolerance and management "as noted above."  (AR 2166.)

18        As with the evaluation by Dr. Heilbrunn, the ALJ acknowledged the existence of this

19   evaluation as "performed during a subsequent period," after plaintiff was granted benefits, and

20   did not find it indicative of his functioning during the period at issue.  (AR 1619.)  Plaintiff

21   argues this reasoning was impermissibly vague.  The Commissioner maintains the ALJ did not

22   reject this opinion and, instead, merely and reasonably interpreted it as not relevant to the time

23   period under consideration.  *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ is

REPORT AND RECOMMENDATION
PAGE - 21

1  required to provide reasons for rejecting opinion evidence, not merely interpreting it; finding no

2  error where ALJ reasonably interpreted a statement that a claimant could adapt to a "sedentary

3  type job" did not mean the physician opined plaintiff could only perform "sedentary work" as

4  defined in Social Security regulations).  Plaintiff, in response, contends the ALJ had a duty to

5  evaluate this opinion and provide legally sufficient reasons for its rejection since it was dated

6  only three months after the relevant period and addressed long-standing impairments.

7       Dr. Tartalia's inclusion of the phrases "at this time" and "due to present level" of

8  symptoms provide support for the ALJ's interpretation that the opinions did not relate back to an

9  earlier time period.  (AR 2166.)  Also, unlike the evidence from Dr. Heilbrunn, there is no

10  indication this evaluation has been considered as relating back to an earlier time.  Plaintiff was

11  found currently disabled based solely on his physical limitations, and his mental impairment

12  claim was not further developed.  (AR 1821.)  The evaluation from Dr. Tartalia is additionally

13  notable in reflecting plaintiff "denied any abuse of or ever using street drugs" (AR 2163), which

14  is contrary to his history of heroin and cocaine abuse.  It also appears Dr. Tartalia had access to

15  only a single medical record, a November 2009 VA rating decision, and a function report

16  completed by plaintiff.  (*Id*.)

17       However, the ALJ did not identify any of the above or any other reasons for rejecting the

18  opinion evidence from Dr. Tartalia.  This Court must review the ALJ's decision "based on the

19  reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to

20  intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219,

21  1225 (9th Cir. 2009).  *See also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir.

22  2006) (court cannot affirm decision of agency on a ground the agency did not invoke).  Nor did

23  the ALJ point to evidence showing some worsening of plaintiff's mental condition following the

REPORT AND RECOMMENDATION
PAGE - 22

period at issue.  (*See* AR 1619 (addressing worsening physical condition only).)  Given that it is

undisputed plaintiff had several severe mental impairments during the relevant time period, and

that Dr. Tartalia rendered his opinions only some three months after that period ended, the ALJ

should have addressed the evaluation and provided specific and legitimate reasons for rejecting

assessed limitations.

C.    Dr. Bondurant

        In a letter dated March 16, 2015, Dr. Bondurant attested to plaintiff's PTSD stemming

from childhood sexual trauma and recurrent depression, his treatment for PTSD, and his

"ongoing difficulty with authority, poor self-worth, feelings of guilt, difficulty in standing up for

himself, with classic PTSD symptoms of hypervigilance, avoidance, and re-experiencing."  (AR

2349.)  He states plaintiff's PTSD and depression "have been stable, although remain quite

symptomatic."  (*Id.*)  Dr. Bondurant relates his "assumption" that the level of severity of these

conditions would "impair any employability[,]" while adding:  "[H]owever, I do not feel I am

qualified to remark one way or the other on his unemployability secondary to his PTSD and

depression."  (*Id.*)  He noted Dr. Brown's January 2010 assessment, identified her as qualified to

make a determination on unemployability, and deferred to her judgment on the issue.  (*Id.*)

        The ALJ described Dr. Bondurant's letter as "merely defer[ing] to the psychological

assessment of Dr. Brown."  (AR 1618.)  She, therefore, assigned the letter minimal weight for

the same reasons she did not find the opinions of Dr. Brown persuasive.  (*Id.*)  Plaintiff contends

the ALJ should not have rejected Dr. Bondurant's observations as to functional limitations based

on his failure to opine as to employability, which is a vocational, not medical consideration.

        Some issues, such as whether an individual is disabled or unable to work, are

determinations reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A

REPORT AND RECOMMENDATION
PAGE - 23

statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p.   However, while reserved to the Commissioner, this fact does not undermine the validity of the opinions of treating and examining physicians; instead, such opinions are not "entitled to controlling weight or special significance."  SSR 96-5p.  *See also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity.")

The ALJ reasonably considered that Dr. Bondurant declined to offer an opinion as to unemployability.  She also reasonably discounted this evidence given the admitted deference to the opinions of Dr. Brown, whose opinions the ALJ provided sufficient reasons for rejecting.

The ALJ further acknowledged that plaintiff has severe mental impairments, and assessed limitations in the RFC accounting for symptoms resulting from those impairments.  Although recounting a number of symptoms associated with plaintiff's impairments, Dr. Bondurant's letter does not assign any specific functional limitations requiring the provision of any additional reasoning from the ALJ.  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions in relation to an ability to work "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.")  Plaintiff, for all of these reasons, fails to demonstrate error in the ALJ's consideration of the letter from Dr. Bondurant.

REPORT AND RECOMMENDATION
PAGE - 24

Step Five

The errors identified above potentially implicate the remainder of the ALJ's decision. The Court otherwise declines to separately address the assertion of error at step five.

Remand

The Court has discretion to remand for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'"  *Brown-Hunter v. Colvin*, 798 F.3d 749, 757 (9th Cir. 2015), *as amended in* 2015 U.S. App. LEXIS 19180 (9th Cir. Ariz. Nov. 3, 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

Before remanding a case for an award of benefits, three requirements must be met.  First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).  Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'"  *Id.*  In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made.  *Id.* (quoting *Treichler*, 775 F.3d at 1105).  Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'"  *Id.* at 758 (quoting Garrison, 759 F.3d at 1021).[8]  *See also Treichler*, 775 F.3d 1101 ("Third, if we conclude that no outstanding issues remain and further proceedings would not be useful, we . . . [find] the relevant testimony credible

---

[8] The Court considers the existence of outstanding issues *before* considering whether to credit a claimant's testimony or a medical opinion as a matter of law.  *Brown-Hunter*, 798 F.3d at 757; *Treichler*, 775 F.3d at 1105.

REPORT AND RECOMMENDATION
PAGE - 25

as a matter of law, and then determine whether the record, taken as a whole, leaves "'not the slightest uncertainty as to the outcome of [the] proceeding[.]'") (citations omitted).

Finally, even with satisfaction of the three requirements, the Court retains "'flexibility'" in determining the proper remedy. *Brown-Hunter*, 798 F.3d at 758 (quoting *Garrison*, 759 F.3d at 1021). The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* at 757-58 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error. To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "disability benefits . . . available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).") *Accord Strauss v. Comm'r of the SSA*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

This case should be remanded for further administrative proceedings. Plaintiff demonstrates error in the consideration of evidence associated with his venous insufficiency edema and visual impairment, but there is no medical opinion establishing an associated functional limitation supporting a finding of disability within the relevant time period. Nor has a medical advisor yet been called to opine as to the date of disability onset for plaintiff's physical impairments. Plaintiff's testimony on these points, given the affirmed credibility assessment, does not alone justify an award of benefits. Likewise, while the ALJ erred in considering the opinions of Dr. Tartalia, an award of benefits based on that error would not be appropriate. Further proceedings would be useful to allow for the ALJ's consideration of this evidence as a

REPORT AND RECOMMENDATION
PAGE - 26

general matter and in relation to the relevant time period, and outstanding issues regarding plaintiff's mental impairments remain.  The ALJ should, on remand, reconsider the evidence associated with plaintiff's venous insufficiency and visual impairments, call upon the services of a medical expert to opine as to a date of onset, and assess the opinion evidence from Dr. Tartalia.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 19, 2016**.

DATED this 4th day of February, 2016.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 27